UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 07-280 (PLF) |
| | : | |
| v. | : | |
| | : | |
| TYREN D. HYMAN | : | |
| | : | |
| Defendant | | |

**GOVERNMENT'S NOTICE OF INTENT TO INTRODUCE EVIDENCE OF
UNCHARGED CONDUCT, OPPOSITION TO DEFENDANT'S MOTION TO
EXCLUDE OTHER CRIMES EVIDENCE, AND NOTICE OF INTENT TO
INTRODUCE 404(B) EVIDENCE ON CROSS-EXAMINATION OR REBUTTAL**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby gives notice of its intent to introduce evidence of uncharged conduct that is intrinsic evidence in this case and thus not subject to the strictures of Rule 404(b), and states its opposition to Defendant's Motion to Exclude Other Crimes Evidence. The government also hereby gives notice of its intent to introduce 404(b) evidence on cross-examination or rebuttal. In support of these Notices and Opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this issue:

**FACTUAL BACKGROUND**

1.  The defendant, Tyren Hyman, was charged by indictment with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

2.  The government believes its evidence will show that on July 30, 2007, Prince Georges County Police Officer Michael Beaver, who is currently assigned to an ATF task Force, parked his unmarked ATF vehicle at the ATF parking lot in Prince Georges County. Officer

Beaver secured his firearm in his vehicle and went into the office. When he returned, he discovered that the vehicle had been broken into and that his wallet, identification folder, and his .40 cal. H & K semi-automatic pistol bearing serial No. 26-001231 had been stolen. The next day, Officer Beaver reviewed the surveillance tape of the parking lot and observed a gray or silver SUV pull up next to Officer Beaver's government issued Dodge Ram pick-up truck. A black male, who appeared to Officer Beaver to be between 18-24 years of age, approximately 5'7" and 160 pounds, with a white sleeveless t-shirt and long braids that fell to just above the shoulder, got out of the vehicle and broke into Officer Beaver's truck. Officer Beaver requested that the surveillance tape be preserved as evidence, but due to the delay of the technician, the tape was overwritten.[1]

       3.      On September 18, 2007, at approximately 9:40 p.m., an officer from the Metropolitan Police Department initiated a traffic stop at the intersection of Southern Avenue and H Streets, S.E., Washington, D.C. As the officer was about to arrest the two suspects, they started running. The officer broadcast a look-out for the suspects, and Officer Michael Architzel drove into the area to assist in the canvas. While doing so, some citizens flagged Officer Architzel down and told him that the suspects fled toward Southern Avenue and Fitch Streets, S.E. Officer Architzel went to the rear of the 5100 block of Fitch Street and observed an individual, later determined to be the defendant, Tyren Hyman, whose appearance was consistent with the description that had been broadcast for one of the fleeing suspects, walking through an open gate. Officer Architzel, while still in his police car, approached the defendant and they made eye contact. The defendant then put his hand in his waistband and Officer Architzel got

---

[1] The government provided defense counsel with the Prince Georges County police reports that were prepared in connection with the theft of the weapon.

out of the car. The defendant immediately started running and Architzel chased him.[2] During the chase, the defendant took a black pistol from his waist area and threw it to the ground. At the time, the defendant was 12-15 feet from a high intensity security light which made the visibility good, and there were no other individuals in that area at the time.

4. The chase continued and the defendant attempted to climb over a fence. Officer Architzel, by now accompanied by Officer William Reinckens, caught the defendant, pulled him down from the fence, and placed him under arrest. The defendant said, "I thought you all were the stickup boys."[3] The officers returned to the area were Officer Architzel observed the defendant throw the gun and recovered a .40 caliber H & K semi-automatic pistol that was loaded with 11 rounds of .40 caliber ammunition in the magazine, and one in the chamber. The gun was test fired and determined to be operable. The pistols' serial number was scraped off the bottom of the slide but was still visible on the barrel and it had the same serial number as Officer Beaver's stolen firearm. The officer who had made the initial traffic stop and broadcast the look-out for the fleeing suspects responded to the area and determined that the defendant was not one of the suspects who had fled from the car during his traffic stop.

5. On September 19, 2007, Detective Laura Aceto showed Officer Beaver a single photograph of the defendant and Officer Beaver identified him as the same individual he had seen on the surveillance tape breaking into his vehicle. According to the police reports, at the time of the defendant's arrest he was 29 years old, 5'7", 165 pounds, with long dreadlocks.

---

[2]The government provided defense counsel with a copy of the radio run containing the stop of the initial vehicle and lookout description, Officer Architzel's transmission in reference to the citizens' report, the chase and call for assistance, and the subsequent recovery of the weapon.

[3]The government does not intend to elicit this statement in its case-in-chief, but reserves the right to use it on cross-examination or in rebuttal.

## ARGUMENT

6. Contrary to defendant's Motion, the government is not seeking to admit the evidence of the theft of the gun as 404(b) evidence, but rather as evidence that is intrinsic to the case. As the courts have held, evidence of acts which are part of, or "inextricably intertwined" with, a charged crime is direct proof of that crime and is not subject to Rule 404(b) analysis. United States v. Badru, 97 F.3d 1471, 1474-75 (D.C. Cir. 1996), *cert denied*, 520 U.S. 1213 (1997); United States v. Allen, 960 F.2d 1055, 1058 (D.C. Cir.), *cert denied*, 506 U.S. 881 (1992); United States v. Diaz, 878 F.2d 608, 614-16 & n.2 & 3 (2d Cir.), *cert denied*, 493 U.S. 993 (1989).

7. As the government previously informed defense counsel, we do not intend to elicit any testimony about the photo identification made by Officer Beaver on September 19, 2007. Rather, we seek to admit testimony about the circumstances of the theft, and Officer Beaver's subsequent observations made upon viewing the surveillance video the following day, to include a description of the individual he observed breaking into his vehicle. As noted above, we anticipate that Officer Beaver will describe the individual as a black male, between 18-24 years of age, approximately 5'7" and 160 pounds, with a white sleeveless t-shirt and long braids that fell to just above the shoulder. While, arguably, the evidence of the theft is stronger when linked with Officer Beaver's subsequent single photo identification of the defendant on September 19, 2007, testimony about the theft of the gun is still direct, relevant, evidence that the person on the surveillance tape is the same person who ran from the police and threw down the gun a mere month and a half later. As Officer Beaver will testify, the stolen gun costs approximately $1,000, and, from that, a jury could infer that it was not passed on from the person who initially stole it from Officer Beaver's vehicle and who, as the jury can also determine, has the same physical

description as the defendant.[4]  As defined in Rule 401, this is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

8.      Alternatively, assuming *arguendo* that the Court rules that the theft of the gun is not intrinsic evidence, the government submits that it should still be admitted pursuant to Rule 404(b) as it goes to identity and opportunity, namely that the person who stole the gun and the person who threw it down and ran from the police is the same individual.  Rule 404(b) provides that evidence of "other crimes, wrongs, or acts" is not admissible to prove a defendant's character, but is admissible for any non-propensity purpose, including motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.  See United States v. Bowie, 232 F.3d 923, 926, 930 (D.C. Cir. 2000).  Importantly, this rule is one of "inclusion rather than exclusion."  Id. at 929.  As the Court of Appeals has noted en banc, while the first sentence of the rule is framed restrictively, the rule is actually quite permissive, prohibiting the admission of other crimes evidence in but one circumstance – for the purpose of proving that a person's actions conformed to his character.  United States v. Crowder, 141 F.3d 1202, 1206 (D.C. Cir. 1998).  In short, Rule 404(b) bars "not evidence as such, but a theory of admissibility."  Id. at 1202.  As the Court stated in United States v. Cassell, 292 F.3d 788, 791 (D.C. Cir. 2002)(citing United States v. Miller, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original), "[t]rue, the evidence may tend to show that [defendant] is a person of bad character, but Rule 404(b) does not thereby render it inadmissible.  To reiterate what we have stated before . . . under Rule 404(b), 'any purpose for which bad acts evidence is introduced is a proper

---

[4] If the defendant's physical appearance, particularly his hair, changes before the trial, the government will also seek to admit his MPD arrest photo showing his appearance on that date, and testimony as to his height and weight.

purpose so long as the evidence is not offered <u>solely</u> to prove character.'"

9.  In this case, the evidence that someone matching the defendant's description stole a $1,000 handgun from Officer Beaver's vehicle is probative of the identity of the person who later threw down the weapon, and the opportunity that the defendant had to possess the weapon. Moreover, as Officer Beaver will not definitively say that it was the defendant, as opposed to someone who looked like him, who stole the weapon, the probative value of the evidence is not substantially outweighed by its prejudicial effect.

10. Finally, although the government is aware that pursuant to <u>United States v. Linares</u>, 367 F.3d 931, 949-950 (D.C. Cir. 2004), evidence of other bad acts to show that a defendant knowingly possessed a firearm is not relevant in an actual possession case such as this one, should the defendant put on evidence through direct testimony, cross examination or otherwise that suggests that he knows nothing about guns, never touches them, and/or that he never runs from or struggles with the police, the government will seek to not only impeach the defendant with his prior convictions if he is on the stand, but will also seek to admit the following evidence through cross-examination and/or rebuttal to show that the defendant's possession of the gun on September 18, 2007, was knowing and intentional, and was not the result of inadvertence or mistake or accident:[5]

- On July 2, 2003, the defendant pled guilty to one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for One Year or More in CR 02-448. In that case, on October 10, 2002, members of the Metropolitan Police Department stopped the defendant at

---

[5] The evidence and details described herein are necessarily brief. The government respectfully requests leave to supplement this motion with additional details and evidence, as they become available and as it becomes appropriate to do so.

    5201 E Street, S.E. and attempted to place him under arrest in an unrelated case. The defendant ran. When he was subsequently apprehended, a search incident to arrest revealed a loaded Colt .357 revolver in the right leg of his jeans.[6]

- On July 2, 2003, the defendant pled guilty to one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for One Year or More in CR 03-126. In that case, on February 28, 2003, members of the Metropolitan Police Department went to 5029 Hannah Place, S.E. to execute an arrest warrant for the defendant. Upon entering the apartment, the officers saw a Kimber .45 caliber semi-automatic pistol loaded with 10 rounds of .45 caliber ammunition. The defendant had previously removed the firearm from a stolen vehicle.

- On February 16, 2007, the defendant was arrested at 5500 Livingston Terrace in Oxon Hill, Maryland, by the Prince Georges County Police Department. He is still pending trial. According to the police report which was provided to defense counsel in discovery, a traffic stop was conducted on a vehicle in which the defendant was the front seat passenger. He was seen reaching towards his waistband and towards the floorboard, and did not comply with orders to put his hands on the dashboard. The officers asked the defendant to step out of the vehicle. When an officer attempted to conduct a pat down, the defendant pushed the officer. A struggle ensued during which the defendant punched the officer while also reaching for his waistband. When the defendant was finally subdued,

---

[6]The government will not seek to admit that the arrest was for distribution of marijuana and that the search of the defendant also revealed additional ziplocks of marijuana and $383.91.

they recovered a Bersa SA Ramos Mejia Argentina Mini-Firestorm 9mm semi-automatic pistol loaded with nine rounds and one in the chamber from the defendant's right pant leg.

10. Numerous cases in this Circuit and others demonstrate that evidence of a prior or subsequent possession of a firearm is admissible as 404(b) evidence. See United States v. Cassell, 292 F.3d 788, 791 (D.C. Cir. 2002) (evidence of defendant's prior gun possessions admissible under Rule 404(b) "because it was relevant to show knowledge of, and intent to possess, the firearms recovered from his room").  As the Court of Appeals noted in Cassell, "[w]e have previously held that 'in cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged.'" Id. at 793 (citation omitted).

WHEREFORE, for the reasons stated above, the United States respectfully submits that the government's motion to admit intrinsic evidence or, in the alternative or upon evidence presented by defendant as to lack of knowledge, to admit other crimes evidence pursuant to Rule 404(b), be granted.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

   /s/
Jean W. Sexton
Assistant United States Attorney
NJ Bar No. 02122-1995
555 4th Street, N.W.  #4235
Washington, DC 20530
(202) 305-1419; Fax: 514-6010
Jean.Sexton@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-280 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **TYREN D. HYMAN** | : | |
| | : | |
| **Defendant** | | |

**ORDER**

Upon consideration of the Government's Motion to Introduce Intrinsic Evidence, and the record herein, it is this _____ day of December, 2007,

ORDERED, that the Government's Motion is Granted.

_____
UNITED STATES DISTRICT JUDGE

copies to:

Jean W. Sexton, Esq.
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Dani Jahn, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004