UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-280 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **TYREN D. HYMAN** | : | |
| | : | |
| **Defendant** | | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
TO SUPPRESS TANGIBLE EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby opposes defendant's Motion to Suppress Tangible Evidence. In support of its Opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at any hearing on this issue:

**FACTUAL BACKGROUND**

1. The defendant, Tyren Hyman, was charged by indictment with one count of Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of 18 U.S.C. § 922(g)(1).

2. The government believes its evidence will show that on July 30, 2007, Prince Georges County Police Officer Michael Beaver, who is currently assigned to an ATF task Force, parked his unmarked ATF vehicle at the ATF parking lot in Prince Georges County. Officer Beaver secured his firearm in his vehicle and went into the office. When he returned, he discovered that the vehicle had been broken into and that his wallet, identification folder, and his .40 cal. H & K semi-automatic pistol bearing serial No. 26-001231 had been stolen. The next day, Officer Beaver reviewed the surveillance tape of the parking lot and observed a gray or

silver SUV pull up next to Officer Beaver's government issued Dodge Ram pick-up truck. A black male, who appeared to Officer Beaver to be between 18-24 years of age, approximately 5'7" and 160 pounds, with a white sleeveless t-shirt and long braids that fell to just above the shoulder, got out of the vehicle and broke into Officer Beaver's truck. Officer Beaver requested that the surveillance tape be preserved as evidence, but due to the delay of the technician, the tape was overwritten.[1]

    3.       On September 18, 2007, at approximately 9:40 p.m., an officer from the Metropolitan Police Department initiated a traffic stop at the intersection of Southern Avenue and H Streets, S.E., Washington, D.C. As the officer was about to arrest the two suspects, they started running. The officer broadcast a look-out for the suspects, and Officer Michael Architzel drove into the area to assist in the canvas. While doing so, some citizens flagged Officer Architzel down and told him that the suspects fled toward Southern Avenue and Fitch Streets, S.E. Officer Architzel went to the rear of the 5100 block of Fitch Street and observed an individual, later determined to be the defendant, Tyren Hyman, whose appearance was consistent with the description that had been broadcast for one of the fleeing suspects, walking through an open gate. Officer Architzel, while still in his police car, approached the defendant and they made eye contact. The defendant then put his hand in his waistband and Officer Architzel got out of the car. The defendant immediately started running and Architzel chased him.[2] During the chase, the defendant took a black pistol from his waist area and threw it to the ground. At the

---

[1] The government provided defense counsel with the Prince Georges County police reports that were prepared in connection with the theft of the weapon.

[2] The government provided defense counsel with a copy of the radio run containing the stop of the initial vehicle and lookout description, Officer Architzel's transmission in reference to the citizens' report, the chase and call for assistance, and the subsequent recovery of the weapon.

time, the defendant was 12-15 feet from a high intensity security light which made the visibility good, and there were no other individuals in that area.

4.  The chase continued and the defendant attempted to climb over a fence. Officer Architzel, by now accompanied by Officer William Reinckens, caught the defendant, pulled him down from the fence, and placed him under arrest. The defendant said, "I thought you all were the stickup boys."[3] The officers returned to the area were Officer Architzel observed the defendant throw the gun and recovered a .40 caliber H & K semi-automatic pistol that was loaded with 11 rounds of .40 caliber ammunition in the magazine, and one in the chamber. The gun was test fired and determined to be operable. The pistols' serial number was scraped off the bottom of the slide but was still visible on the barrel and it had the same serial number as Officer Beaver's stolen firearm. The officer who had made the initial traffic stop and broadcast the look-out for the fleeing suspects responded to the area and determined that the defendant was not one of the suspects who had fled from the car during his traffic stop.

## ARGUMENT

5.  It is well established that the rights guaranteed by the Fourth Amendment are personal in nature. To assert these rights, a defendant must establish that he or she had a legitimate expectation of privacy in the place searched or a proprietary interest in the property seized. United States v. Salvucci, 448 U.S. 83, 93 (1980). "When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had." United States v. Thomas, 864 F.2d 843, 845 (D.C. Cir. 1989) (quoting United States v. Jones, 707 F.2d 1169, 1172 (10th Cir. 1983), cert. denied, 464 U.S. 859 (1983)), see also United States v. Lewis, 921

---

[3]The government does not intend to elicit this statement in its case-in-chief, but reserves the right to use it on cross-examination or in rebuttal.

F.2d 1294, 1302 (1990); United States v. Aikens, 13 F. Supp.2d 28, 33 (D.D.C. 1998). Whether an individual intended to abandon property is an objective test and the individual's intent can be inferred from the "words spoken, acts done, and other objective facts." Thomas, 864 F.2d at 846.

6.   In this case, Officer Architzel, while still in his patrol car, approached the area where the defendant was standing and they made eye contact. The defendant then put his hand in his waistband and Officer Architzel, dressed in his police uniform, got out of the car. The defendant immediately started running in an alley behind an apartment building and Officer Architzel followed. While still running, the defendant threw down what Officer Architzel could see was a gun. Officer Architzel had not touched the defendant at any point prior to the defendant throwing the gun down, and the defendant did not stop running after doing so. Officer Architzel, who had now been joined by Officer Reinckens, finally stopped the defendant as the defendant was trying to climb over a fence. The officers returned to the location where Officer Architzel had seen the defendant toss the gun and recovered a loaded .40 caliber semi-automatic pistol. See Thomas, 864 F.2d at 846 (holding that defendant who fled from police into apartment building with gym bag and then left bag in hallway had abandoned property); Aikens, 13 F. Supp.2d at 33 (denying motion to suppress and holding that defendant abandoned gun when he threw down gun in trash bin in alley while running from police; officers' subsequent warrantless seizure of gun was proper).

7.   Finally, there was no illegal police conduct that preceded the defendant's abandonment of the weapon. As the Supreme Court held in the factually analogous case of California v. Hodari D., 499 U.S. 621, 626 (1991), a suspect is not otherwise "seized" by an officer's non-physical show of authority if the suspect fails to yield. 499 U.S. at 626. In Hodari D., the officers, traveling in an un-marked police vehicle, but wearing clothing identifying

themselves as police officers, came upon a group of youths in a high-crime area, who immediately started fleeing when they saw the unmarked police vehicle. 499 U.S. at 623. One of the officers pursued the defendant and ordered him to stop, but the defendant continued to run. As he was running, the defendant dropped a rock and continued to flee. Id. at 624. The officer finally tackled the defendant, and the rock was subsequently recovered and determined to be crack cocaine. Id. The Supreme Court held that the defendant was not seized until the officer tackled him because the defendant had failed to yield to the officer's verbal attempt to assert his authority. Id. at 626-27. In this case, as in Hodari D., the defendant neither submitted to Officer Architzel's show of authority prior to or during the chase, nor was he physically touched by Officer Architzel prior to throwing down the weapon. Indeed, the defendant was stopped as he was climbing over a fence and that was several feet past where he had thrown the weapon.

WHEREFORE, for the reasons stated above, the defendant's motion should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney

\_\_\_\_/s/_____
Jean W. Sexton
Assistant United States Attorney
NJ Bar No. 02122-1995
555 4th Street, N.W.  #4235
Washington, DC 20530
(202) 305-1419; Fax: 514-6010
Jean.Sexton@usdoj.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 07-280 (PLF)** |
| | : | |
| v. | : | |
| | : | |
| **TYREN D. HYMAN** | : | |
| | : | |
| **Defendant.** | | |

**ORDER**

Upon consideration of the Defendant's Motion to Suppress Tangible Evidence, and the Government's Opposition thereto, it is this _____ day of January, 2008,

ORDERED, that the Defendant's Motion is DENIED.

_____
UNITED STATES DISTRICT COURT JUDGE

copies to:

Jean W. Sexton, Esq.
Assistant U.S. Attorney
555 4th Street, N.W.
Washington, D.C. 20530

Dani Jahn, Esq.
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004